UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSH MATTHEWS, on behalf of himself and all others similarly situated, | |
| Plaintiff, | No. 25 CV 1928 |
| v. | Judge Georgia N. Alexakis |
| CRESCO LABS, INC.; CRESCO LABS, LLC; CRESCO U.S. CORP.; CRESCO EDIBLES, LLC; TSC CRESCO, LLC; CRESCO LABS JOLIET, LLC; CRESCO LABS KANKAKEE, LLC; CRESCO LABS LOGAN, LLC, CRESCO LABS NOTES ISSUER, LLC. | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

On April 21, 2024, plaintiff John Matthews purchased a vapable cannabis oil cartridge from an Illinois cannabis dispensary. Matthews then sued the manufacturer Cresco Labs, LLC, and related business entities (hereafter "Cresco") in Illinois state court, alleging that because the cartridge was not compliant with the Illinois Cannabis Act, Cresco had engaged in deceptive trade practices and consumer fraud. [1-1]. Cresco then removed to federal court under the Class Action Fairness Act ("CAFA"). [1]; 28 U.S.C. § 1332(d).

Matthews now moves for remand or, in the alternative, limited discovery to determine if the case falls into one of the statutory CAFA exceptions. [20]. For the following reasons, the motion to remand is denied but the motion for limited discovery is granted.

I. **Legal Standards**

Because federal courts are courts of limited jurisdiction, the burden of establishing jurisdiction rests upon the party asserting it. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1997). Once a removing party proves the federal court has subject-matter jurisdiction, the burden shifts to the party opposing removal to prove that an "express exception to removability" applies. *Hart v. FedEx Ground Package System, Inc.*, 457 F.3d 675, 679–80 (7th Cir. 2006).

II. **Background**

The Court credits the following allegations from the complaint as true for purposes of resolving the instant motion. On April 21, 2024, Matthews, an adult citizen of Illinois, purchased a Cresco High Supply Space Fruit 500-milligram vapable cannabis oil cartridge from a cannabis dispensary in Oak Lawn, Illinois. [1-1] ¶¶ 16, 113–14. Vapable cannabis oil is a cannabis product that is "ubiquitous and readily available at most dispensaries." *Id.* ¶ 42. A vapable cannabis oil cartridge like that purchased by Matthews is inserted in a battery—also known as a "vape pen"—which heats the cannabis oil until it is vaporized and can be inhaled by the user. *Id.* ¶ 47.

The purchase, possession, and use of certain cannabis products is legal under the Illinois Cannabis Act. *See* 410 ILCS 705/10-5. But the quantity of cannabis products that an individual can possess is restricted by type. 410 ILCS 705/10-10. As relevant here, those limits include "no more than 500 milligrams of THC contained in cannabis-infused product," 410 ILCS 705/10-10(a)(2), and "5 grams of cannabis

concentrate," 410 ILCS 705/10-10(a)(3).[1] A cannabis-infused product is any "beverage, food, oil, ointment, tincture, topical formulation, or another product containing cannabis or cannabis concentrate *that is not intended to be smoked.*" 410 ILCS 705/1-10 (emphasis added). Cannabis-infused products cannot be packaged in quantities exceeding 100 milligrams of THC. 410 ILCS 705/55-21(k). Cannabis concentrate is a product "derived from cannabis that is produced by extracting cannabinoids, including tetrahydrocannabinol (THC) … *with the intended use of smoking or making a cannabis-infused product.*" 410 ILCS 705/1-10 (emphasis added). The Illinois Cannabis Act defines "smoking" as "the inhalation of smoke caused by the combustion of cannabis." 410 ILCS 705/1-10.

The core of Matthew's complaint is that while Cresco's vapable cannabis oil is packaged and marketed as a "cannabis concentrate" subject to the higher 5-gram possession limit, it is in fact a cannabis-infused product subject to the lower limits. [1-1] ¶¶ 93–97. Since the Cannabis Act defines cannabis concentrate as having "an intended use of smoking," 410 ILCS 705/1-10, and a vape pen creates oil vapor rather than "smoke caused by the combustion of cannabis," *id.*, Matthews argues that vapable cannabis oil is not intended for smoking and therefore not cannabis concentrate. [1-1] ¶¶ 61–65.

According to Matthews, this misleads and harms consumers in two ways. First, the substantially greater quantity of THC may result in overconsumption, with

---

[1] The limits are reduced for out-of-state purchasers, but the differences are irrelevant to the instant motion.

3

associated negative effects like "psychoactive effects, anxiety attacks, or overwhelming intoxication." *Id.* ¶ 104. Second, a consumer who possessed 5 grams of cannabis-infused product exceeds the legal possession limit and may thus inadvertently find herself out of compliance with Illinois law. *Id.* ¶¶ 98–103.

Matthews sued Cresco in Illinois court on January 14, 2025. [1-1]. In addition to his individual claims, Matthews seeks to bring claims on behalf of "[a]ll persons who … purchased within the State of Illinois any Vapable Oils manufactured, processed, made, labeled, and/or packaged by Defendants." *Id.* ¶ 125. Cresco quickly removed to federal court pursuant to the Class Action Fairness Act ("CAFA"), [1], which grants original federal jurisdiction when a proposed class has at least 100 members, the aggregate amount in controversy exceeds $5,000,000, and the class is minimally diverse. 28 U.S.C. § 1322(d)(2). There is no current dispute[2] that this case meets these threshold requirements for federal jurisdiction; rather, Matthews now contends that remand is warranted based on three CAFA exceptions: the home-state exception, the local controversy exception, and the discretionary exception. [20] at 6–11. In the alternative, Matthews moves for limited discovery to determine whether any of the proposed exceptions are met. *Id.* 11–14.

---

[2] Matthews initially argued that Cresco had failed to establish minimal diversity, [20] at 4–6, but at a May 28, 2025 hearing conceded that Cresco's response, [24-1], sufficiently identified at least one non-Illinois citizen, and does not challenge the amount-in-controversy or class size requirements.

4

### III. Analysis

#### A. Motion to Remand

Under CAFA's home-state exception, the Court "shall decline to exercise jurisdiction" over class action cases "when two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Matthews argues that "it is all but certain that more than two-thirds of the putative class members are Illinois citizens because the class is limited to individuals who purchased Defendants' Vape Products in the State of Illinois." [20] at 6. As a result, all transactions must have occurred in Illinois, and because both state and federal law prevent transportation of cannabis products to other states, "it is likely that the majority of the class that purchased Vape Products in Illinois are citizens of Illinois." *Id.*

While Matthews notes that Cresco has not offered proof that more than one-third of purchasers are not Illinois citizens, [20] at 6, Cresco has established the criteria for removal, so the burden is now on Matthews to show by a preponderance of evidence that some exception applies. *See Hart*, 457 F.3d at 679–80. To do so, Matthews relies on Illinois state reports that indicate "the overall percentage of cannabis sales attributable to out-of-state consumers in 2023 and 2024 was roughly 25% of total sales overall." [20] at 7 (citing Illinois Department of Financial and Professional Regulation, Fiscal Year 2023 Annual Cannabis Report, 12 (https://idfpr.illinois.gov/content/dam/soi/en/web/idfpr/forms/auc/fy-2023-idfpr-annual-cannabis-report.pdf)).

5

But the state reporting tracks Illinois *residency* rather than Illinois *citizenship*, and these are different things. *See In re Sprint Nextel Corp.*, 593 F.3d 669, 674 (7th Cir. 2010); *see also Henry v. AbbVie, Inc.*, No. 23 CV 16830, 2024 WL 4278070, at *4 (N.D. Ill. Sept. 24, 2024) ("Citizenship requires domicile—where a person intends to live over the long run. Simply because a person currently lives in one place does not necessarily mean he or she is domiciled there.") (cleaned up).

Thus, Matthews's conclusion that at least two-thirds of the putative class members must be Illinois citizens is "[s]ensible guesswork, based on a sense of how the world works, but guesswork nonetheless." *Sprint*, 593 F.3d at 674. And the Seventh Circuit has said this sort of guesswork is not enough. *Id.* ("[A] court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses."); *see also Myrick v. WellPoint, Inc.*, 764 F.3d 662, 665 (7th Cir. 2014) (plaintiff's assertions that Illinois residents are Illinois citizens "may or may not be right, but plaintiffs did not offer any evidence to support them"). Matthews thus has not met his burden of demonstrating that two-thirds of proposed class members are Illinois citizens, as required for the home-state exemption.

Because Matthews has not met his burden to establish that more than two-thirds of the putative class members are Illinois citizens, he also has not shown that he is entitled to the local-controversy exception under 28 U.S.C. § 1332(d)(4)(A). That statute, too, requires "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally

6

filed." Because Matthews has not met the citizenship-ratio requirement, the Court does not reach the others.

For the same reason, Matthews has not shown that he can benefit from 28 U.S.C. § 1332(d)(3), which gives the Court discretion to decline CAFA jurisdiction where, among other requirements, "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes … are citizens of the State in which the action was originally filed." While it seems highly likely that at least one-third of the putative class members are Illinois citizens, Matthews presents only evidence of residence, which is not enough to prove citizenship. *See Henry,* 2024 WL 4278070, at \*4. Because Matthews has not presented proof that at least one-third of class members are Illinois citizens, the Court cannot exercise the discretionary exemption.

For these reasons, Matthews' motion for remand is denied.

**B.     Motion for Limited Discovery**

Matthews alternatively moves for limited discovery to determine whether more than two-thirds of the putative class are Illinois citizens. [20] at 11. The Seventh Circuit has instructed that "plaintiffs have the right, through appropriate discovery, to explore the facts relevant to the court's jurisdiction as the case progresses." *Hart*, 457 F.3d at 682. To determine whether such discovery is warranted, the Court examines whether "the plaintiff has sufficiently shown that an exception likely applies, and the requested information is readily available to the defendants." *Lucchesi v. Specialized Educ. of Illinois, Inc.*, No. 24 C 1732, 2025 WL 240968, at \*2 (N.D. Ill. Jan. 17, 2025) (citing *Young v. Integrity Healthcare Cmtys.*, LLC, 513 F. Supp. 3d 1043, 1052 (S.D. Ill. 2021)).

Matthews contends that he satisfies both of these elements because "it strains credulity that less than two-thirds of class members are Illinois citizens" and that "based on Defendants having purportedly identified states of citizenship of putative class members in their removal papers" the information needed to do so "is readily available to Defendants." [20] at 11–12. Cresco, for its part, argues that discovery is not warranted here because "the Court **has** federal jurisdiction under CAFA," [23] at 10 (bold and italics in original), and because the required citizenship information is not "readily available" to Cresco, *id.*

As to the first point of dispute, the question is not whether the Court has federal jurisdiction. Rather, the question is whether a CAFA exception is likely enough to apply that limited discovery is warranted. *See Sprint*, 593 F.3d at 673 (rejecting "Sprint Nextel's insinuation that federal jurisdiction is proper, regardless of the rules set forth in CAFA," because while Congress's general goal may have been "to ensure that national controversies … are decided in federal court," Congress "also provided for exceptions").

Cresco argues that Matthews' "'bare [and] attenuated' assertions of class-member citizenship" are not enough. [23] at 10 (quoting *Gilliam v. Abro Kalamazoo*, 712 F. Supp. 3d 1079, 1082 (N.D. Ill. 2024)). But Matthews's assertions do not strike the Court as attenuated. It is extremely plausible that most of the purchasers of a product that can only be made, marketed, sold, and possessed in Illinois would be citizens of Illinois. This is especially true in light of the official state reports indicating that 75% of purchasers reside in Illinois, [20] at 7 n.3, the underlying data of which

8

Cresco does not dispute, [23] at 5. The Court agrees with Cresco that class member citizenship cannot be inferred from such a report, *id.*, but the state data nonetheless supports Matthews's contention that "an exception likely applies," *Lucchesi*, 2025 WL 240968, at *2. Other courts have allowed discovery in similar circumstances. *See Pecho v. Maui Jim, Inc.*, No. 21-CV-06202, 2022 WL 4609527, at *3–4 (N.D. Ill. Sept. 29, 2022) (allowing discovery when home state exception "likely" applied because "logically, a class limited to individuals harmed in Illinois would likely produce a class of mostly Illinois citizens."); *McInnis v. SureStaff, LLC*, No. 21 C 0309, 2021 WL 4034072, at *2 (N.D. Ill. Sept. 3, 2021) ("Given that all of the proposed class members had their fingerprints collected, received, otherwise obtained, or disclosed by defendants while in Illinois, [it] seems likely" plaintiff met exception requirements).

As to the second point of dispute: Cresco contends that the information Matthews needs to establish class member citizenship is not "readily available" because, while Cresco indeed proved able to determine state citizenship of two putative class members for the purpose of establishing CAFA jurisdiction, doing so was a "time-intensive exercise." [23] at 10. As the Court understands the process Cresco employed, its Director of Retail Technology:

> reviewed internal records and sorted purchases by Dutchie ID[3] to identify the most recent consumers who purchased the vape products at issue at any of our Sunnyside locations in Illinois; who showed a non-Illinois identification card at the point-of-sale; and who consented to the retention of their personal information by signing up for a Sunnyside.shop account (including name, phone number, and email).

---

[3] Cresco does not define the term "Dutchie ID."

9

[23-1] ¶ 3. The above information was then provided to counsel for Cresco, who took "the names, phone numbers, and email addresses of a sample of individuals believed to be non-Illinois citizens who are members of the putative class defined by the complaint." [23-2] ¶ 2. Counsel used that information to obtain additional information from Accurint to establish that one putative member of the class was a citizen of Indiana and another member of the putative class was a citizen of Tennessee.

The involved process that Cresco undertook to determine the citizenship of just two putative class members demonstrates that "citizenship information" is not readily (as in, promptly or quickly) available. *Contra* [28] at 4 (Matthews argues that "the customer citizenship information is readily available to Defendants"). At the same time, that reality does not mean Matthews is not entitled to some limited amount of discovery. For example, in *Young*, 513 F. Supp. 3d at 1053, the district court permitted plaintiff to engage in discovery where citizenship would have to be established via Accurint searches based on potential class members' social security numbers. In other words, despite requiring a more involved, multi-step process to ascertain, citizenship information was still construed as "readily available."

Here, too, the Court will exercise its discretion and permit Matthews to try and establish citizenship using the internal information that Cresco used to establish the citizenship of two putative class members: records reflecting the state identification card used by purchasers of the vape products at issue at defendant's Sunnyside locations in Illinois, where those purchasers also "consented to the retention of their personal information by signing up for a Sunnyside.shop account (including name,

10

phone number, and email)." [23-1] ¶ 3. Matthews then can use that information to conduct, as counsel for Cresco did, additional research through Accurint (or similar sources) in an effort to establish citizenship.

The Court reiterates that it will not be Cresco's responsibility to ascertain citizenship of putative class members. Cresco's responsibility will only be to give Matthews the same initial data points upon which it relied to conduct its own citizenship inquiries. The Court expects Matthews to be satisfied with this limited amount of discovery in light of the representations that it has made, both in its briefs and at the May 28, 2025 hearing, that it simply wants the ability to replicate Cresco's *process* of establishing citizenship and that it is not asking Cresco to pinpoint citizenship information on its behalf. *E.g.*, [28] at 3 (asking for leave to employ the "same process to determine citizenship); *see also Myrick*, 764 at 665 ("Lawyers who launch class actions are not in a good position to complain about the expenses they entail; plaintiffs and their counsel must be prepared to meet them or be deemed inadequate representatives.").[4]

---

[4] The cases Cresco relies on to oppose discovery are inapposite. For example, *Roppo v. Travelers Ins. Co.* denied a request for additional discovery about class member citizenship after concluding that the plaintiff had failed to satisfy other requirements for the local-controversy or discretionary exceptions, so would not qualify regardless of class-member citizenship. 2014 WL 3810580, at *5–6 (N.D. Ill. Aug. 1, 2014). "In light of that conclusion, discovery [was] not needed to determine the ratio of Illinois to non-Illinois citizens." *Id.* at *6. Similarly, in *Henry* the defendant's motion to dismiss was also denied, so the express rationale for denying the plaintiff's motion for discovery was "because discovery will proceed on all fronts." 2024 WL 4278070, at *1. In other words, these were cases where the requested discovery was pointless or happening anyway. That is not the situation here. *See* [20] at 3 ("The parties also agreed to stay Defendants' responsive pleading deadline pending the outcome of this motion.").

11

The Court further emphasizes that Cresco is not required to turn over each and every stone as part of the limited discovery. As the Seventh Circuit has explained, a representative sample suffices. *See Myrick*, 764 F.3d at 665 (explaining that a putative class plaintiff might replace guesswork with statistical evidence by "tak[ing] a random sample of policyholders (100, say), ascertain the citizenship of each of these on the date the case was removed, and extrapolate to the class as a whole"). The Court expects the parties to be able to agree on the method by which a representative sample will be produced.

**IV.  Conclusion**

For the foregoing reasons, the court denies Matthews's motion to remand [20] without prejudice but grants his request for expedited discovery.

The parties are directed to meet and confer and prepare a joint proposal for conducting expedited discovery consistent with this Memorandum and Order. This proposal is due on or before 8/11/25. The parties should anticipate that the Court will allow up to 90 days for the completion of discovery. And while the Court expects the parties to develop an approach that is amenable to both sides, the Court also wishes to make clear that it is only contemplating some form of expedited, limited, written discovery.

Once the Court is in receipt of the proposed discovery plan, the Court will set further deadlines as needed and/or set the matter for a status conference.

_____
Georgia N. Alexakis
United States District Judge

Date: 7/11/25